Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL XI

| JOSÉ COLÓN COTTO, SU CONYUGE ELSA INÉS VIDAL GONZÁLEZ Y LA SOCIEDAD LEGAL DE GANANCIALES QUE COMPONEN Y OTROS<br><br>Parte Recurrida<br><br>v.<br><br>PREFERRED MORTGAGE CORP., et. als.<br><br>Parte Peticionaria | TA2026CE00070 | *Certiorari procedente del Tribunal de Primera Instancia de Sala Superior de San Juan*<br><br>Caso núm.: SJ2021CV01387<br><br>Sobre: Incumplimiento de Contrato, Daños y Perjuicios |

Panel integrado por su presidenta, la Jueza Rivera Marchand, la Jueza Mateu Meléndez, la Jueza Boria Vizcarrondo y el Juez Robles Adorno.

Robles Adorno, Juez Ponente.

**SENTENCIA**

En San Juan, Puerto Rico, a 7 de abril de 2026.

El 16 de enero de 2026, Preferred Mortgage Corp., et als (la parte peticionaria) presentó ante nos un recurso de *Certiorari* en el que solicitó que revoquemos la *Resolución en Reconsideración* emitida el 16 de diciembre de 2025, notificada el 17 de diciembre de 2025, por el Tribunal de Primera Instancia, Sala Superior de San Juan (TPI o foro primario).[1]

En el aludido dictamen, el foro primario declaró Ha Lugar la *Moción de reconsideración* radicada por el señor José Colón Cotto y otros (la parte recurrida) tras resolver que la parte peticionaria incumplió sus obligaciones contractuales en un contrato de préstamo que suscribió con la parte recurrida. Además, ordenó la

---

[1] Entrada Núm. 150 del caso núm. SJ2021CV01387 en el Sistema Unificado para el Manejo y Administración de Casos (SUMAC).

anotación de rebeldía del señor Edgardo Rovira y su compañía Floor Plan.

Por los fundamentos que expondremos a continuación, expedimos el auto de *certiorari* solicitado y revocamos, en parte, la *Resolución* recurrida.

**I.**

El caso de epígrafe tuvo su origen cuando el 2 de marzo de 2021, la parte recurrida instó una *Demanda* en la que alegó que, el 20 de marzo de 2018, suscribió un contrato de compraventa con respecto a un inmueble.[2] El inmueble en cuestión requería varias reparaciones, las cuales fueron cotizadas por un contratista, el señor Edgardo Rovira, por la suma de $124, 936.00. Ante ello, Preferred Mortgage otorgó un préstamo para financiar la compraventa y la construcción, subvencionado con la Administración de Veteranos. Sin embargo, la parte recurrida alegó que, la parte peticionaria emitió varios cheques sin la autorización de la parte recurrida en favor de Floor Plan y el señor Edgardo Rovira. Adujo que, el ente bancario emitió los cheques, sin las certificaciones que acreditaran las obras de construcción completadas. Consecuentemente, argumentó que, la parte peticionaria tenía que responder por los daños y perjuicios tras emitir cheques sin su conocimiento.

El 20 de julio de 2021, la parte recurrida radicó una *Moción de desestimación por falta de jurisdicción sobre la materia o jurisdicción primaria* en la que argumentó que el Departamento de Asuntos del Consumidor (DACO) era el foro con jurisdicción primaria para atender las reclamaciones sobre los vicios de construcción.[3]

---

[2] Entrada Núm. 3 del caso núm. SJ2021CV01387 en el SUMAC.
[3] Entrada Núm. 22 del caso núm. SJ2021CV01387 en el SUMAC.

En igual fecha, la parte recurrida instó una *Contestación a la demanda* en la que negó, en su mayoría, las alegaciones contenidas en la *Demanda*.[4]

Tras diversos incidentes procesales, el 29 de marzo de 2023, el TPI emitió una *Sentencia Parcial*, notificada el 30 de marzo de 2023, en la que declaró parcialmente Ha Lugar la *Moción de desestimación por falta de jurisdicción sobre la materia o jurisdicción primaria* con respecto a los pagos realizados a Floor Plan, la compañía de construcción contratada por la parte recurrida, puesto que DACO atendió la controversia.[5]

Así pues, el 26 de septiembre de 2023, la parte peticionaria radicó una *Solicitud de sentencia sumaria parcial* en la que solicitó que, el foro primario dispusiera sumariamente del pleito toda vez que, no respondía por la acción de saneamiento dado que no es la constructora de la obra.[6] En esa línea, formuló setenta y siete (77) hechos en los que entendía que no existía controversia. Asimismo, alegó que, cumplió con sus obligaciones como ente financiero, puesto que, la parte recurrida consintió y tenía conocimiento sobre los pagos que se endosaron en favor del contratista. Argumentó que, no surgía del préstamo que, debía responder por los vicios de construcción. Además, adujo que, la parte recurrida contrató a un inspector, el señor Guillermo Burgos, para que se cerciorara de que se estaban completando las obras conforme a lo alegado por los contratistas. Señaló que, dicho inspector era el encargado de informarle a la parte recurrida el progreso de la obra y si procedía el pago de los contratistas. Por ende, ante la ausencia de hechos en controversia, procedía la disposición sumaria de la causa de acción instada en su contra.

---

[4] Entrada Núm. 23 del caso núm. SJ2021CV01387 en el SUMAC.
[5] Entrada Núm. 98 del caso núm. SJ2021CV01387 en el SUMAC.
[6] Entrada Núm. 101 del caso núm. SJ2021CV01387 en el SUMAC.

En respuesta, el 31 de enero de 2024, la parte recurrida presentó una *Moción en oposición a "Solicitud sentencia sumaria parcial" y en solicitud de sentencia sumaria parcial* en la que reiteró que, la parte peticionaria incumplió con los requisitos generales del préstamo de mejora aprobado por la Administración de Veteranos tras autorizar desembolsos facturados por el contratista sin el consentimiento de este.[7] En esa línea, arguyó que, la entidad bancaria, particularmente el señor Eliezer Reyes Castro, asumió un rol activo tras haber tenido una comunicación directa con el contratista puesto que este le solicitaba el desembolso de cuantías mayores a las aprobadas e inspeccionar el proyecto de construcción. Además, adujo que, la parte peticionaria incurrió en negligencia crasa tras desembolsar dinero sin las debidas certificaciones de inspección. Por tanto, sostuvo que, tenía una deuda hipotecaria sobre una propiedad que no podía disfrutar y sobre la cual la parte peticionaria autorizó el desembolso de dinero sin la anuencia de la parte recurrida.

El 21 de junio de 2024, el TPI emitió una *Sentencia Sumaria Parcial* en la que formuló sesenta y siete (67) hechos incontrovertidos.[8] El foro primario razonó que, la parte peticionaria no debía responder por los vicios de construcción puesto que dicha reclamación no se extendía a entidades financieras. Ello, puesto que las acciones de la parte peticionaria fueron limitadas al financiamiento de la compraventa y obras de construcción. El foro primario determinó que, la parte recurrida consintió los pagos endosados por la parte peticionaria y, tenía pleno conocimiento de ello. Por otro lado, el *foro a quo* expresó que, le resultó contradictorio que la parte recurrida consintiera el endoso de los pagos, sin cerciorarse que las obras de construcción fueron realizadas

---

[7] Entrada Núm. 115 del caso núm. SJ2021CV01387 en el SUMAC.
[8] Entrada Núm. 122 del caso núm. SJ2021CV01387 en el SUMAC.

correctamente. Por tanto, exoneró a la parte peticionaria de responsabilidad ante las alegaciones de incumplimiento de contrato.

Insatisfecha, el 8 de julio de 2024, la parte recurrida instó una *Moción de reconsideración* en la que insistió que la parte peticionaria actuó contrario a sus deberes contractuales. [9] Además, ratificó que, la parte peticionaria autorizó varios desembolsos para el pago de diversas obras de construcción sin el consentimiento de la parte recurrida. Por tanto, solicitó que el TPI reconsiderara su determinación.

El 11 de julio de 2024, el foro primario emitió una *Orden* en la que declaró No Ha Lugar la reconsideración.[10]

Inconforme, la parte recurrida acudió ante esta Curia, solicitando que este Tribunal de Apelaciones revocara la *Sentencia Sumaria Parcial* emitida por el *foro a quo* el 21 de junio de 2024.[11] Así pues, el 30 de septiembre de 2024, notificada el 4 de octubre de 2024, un panel hermano emitió una *Sentencia* en la que atendió el recurso de *Apelación* interpuesto por la parte recurrida en la que resolvió que procedía revocar el dictamen apelado. El panel hermano concurrió con el foro primario en cuanto a la inexistencia de hechos en controversia que impedían la disposición sumaria del caso. No obstante, dicho panel resolvió que, el TPI erró en resolver en favor de la parte peticionaria, toda vez que, conforme a derecho, la entidad financiera incumplió contractualmente con la parte recurrida. Ello, pues en el contrato fue acordado que, la parte peticionaria tenía que recibir una carta certificada en la que un inspector confirmara las mejoras, como condición para que esta emitiera los cheques de reembolso. Ante ello, este Tribunal determinó que la parte recurrida no autorizó expresamente los desembolsos, pese a que esta autorizó

---

[9] Entrada Núm. 125 del caso núm. SJ2021CV01387 en el SUMAC.
[10] Entrada Núm. 126 del caso núm. SJ2021CV01387 en el SUMAC.
[11] *Véase Sentencia, José Colón Cotto y otros v. Preferred Mortgage, Corp. y otros,* KLAN202400740.

el pago de ciertas obras bajo la directriz de la parte peticionaria. Esta Curia razonó que, contrario a los hechos de *Cruz Cruz v. Casa Bella Corp.*, 213 DPR 980 (2024), la parte recurrida no participó en el proceso de corroborar si en efecto el contratista completó la obra y si procedía el pago reclamado por este. Consecuentemente, este Tribunal de Apelaciones revocó la *Sentencia Sumaria parcial* puesto que la parte peticionaria autorizó el pago de diversas obras de construcción sin el consentimiento de la parte recurrida y sin la debida certificación de un inspector que esbozara las descripciones de la obra realizada.

Empero, el 17 de diciembre de 2024, notificada el 26 de diciembre de 2024, el panel hermano que atendió el dictamen previamente citado, emitió una *Sentencia en reconsideración* en la que resolvió que procedía desestimar el recurso de *Apelación* presentado por la parte recurrida dado que no le fue notificado a las partes en rebeldía, la sentencia apelada y el recurso de *Apelación*.[12] Por tanto, este Tribunal de Apelaciones desestimó el recurso por carecer de tener jurisdicción y advirtió que el término para apelar no comenzaría a transcurrir hasta tanto todas las partes sean notificadas.

Así las cosas, el 7 de febrero de 2025, el TPI emitió una *Orden* en la que ordenó a la Secretaria que notificara la sentencia apelada a todas las partes, incluyendo las partes en rebeldía.[13]

Ante ello, el 25 de febrero de 2025, la parte recurrida radicó una *Moción en reconsideración* en la que reiteró, y adoptó por referencia, lo solicitado en la *Moción de reconsideración* instada el 8 de julio de 2024.[14] Además, solicitó que, el TPI adoptara persuasivamente el análisis esbozado por este Tribunal de

---

[12] *Véase Sentencia en reconsideración, José Colón Cotto y otros v. Preferred Mortgage, Corp. y otros*, KLAN202400740.
[13] Entrada Núm. 136 del caso núm. SJ2021CV01387 en el SUMAC.
[14] Entrada Núm. 139 del caso núm. SJ2021CV01387 en el SUMAC.

Apelaciones en *José Colón Cotto y otros v. Preferred Mortgage, Corp. y otros*, KLAN202400740.

El 18 de marzo de 2025, la parte peticionaria presentó una *Oposición a reconsideración* en la que enfatizó que, la parte recurrida autorizó los pagos de la obra de construcción y tenía conocimiento sobre las obras que se estaban realizando.[15]

Evaluada ambas posturas, el 17 de diciembre de 2025, el foro primario emitió una *Resolución*[16] en la que formuló los siguientes hechos incontrovertidos:

1. El 17 de noviembre de 2017 los demandantes acudieron a las oficinas de PMC y suscribieron varios documentos incluyendo el contrato de opción de la propiedad ubicada en la Calle Gardenia Núm. 1720, Urb. San Francisco (la propiedad) y la solicitud de préstamo hipotecario con PMC para la compra de la propiedad.

2. A favor de Colon Cotto se expidió un Certificado de Elegibilidad para obtener un préstamo de una institución financiera con garantía de la Administración de Veteranos.

3. Reyes Castro es empleado de la PMC y se desempeña como originador de préstamos hipotecarios. Posee licencia número 161823 del Nationwide Mortgage Licensing System (NMLS), el sistema federal para el licenciamiento y control de los originadores de préstamos hipotecarios. También posee licencia número 018 de la Oficina del Comisionado de Instituciones Financieras de Puerto Rico como Mortgage Loan Originator.

4. Reyes Castro fue el empleado de PMC que el 17 de noviembre de 2017 originó y orientó a los demandantes respecto al préstamo hipotecario para la compra y reparaciones de la propiedad, con garantía de la Administración de Veteranos. Ese día los demandantes firmaron varios documentos como parte del proceso del referido préstamo.

5. Entre los documentos firmados por los demandantes el 17 de noviembre de 2017 se encuentran los siguientes:

a. Autorización / Autorization

b. HUD/VA Addendum to Uniform Residential Application

c. Interviewer's and Applicant's Certification

d. Certificación

e. ¡¡¡Atención!!! Conozca sus derechos

f. Counseling Checklist for Military Homebuyers.

g. Requisitos Generales – Préstamo con reparaciones

6. Luego de originarse la solicitud del préstamo hipotecario, el 2 de febrero de 2018 los demandantes firmaron, en español e inglés, el documento titulado

---

[15] Entrada Núm. 140 del caso núm. SJ2021CV01387 en el SUMAC.
[16] Entrada Núm. 150 del caso núm. SJ2021CV01387 en el SUMAC.

Requisitos Generales – Préstamo con reparaciones VA, así como su versión en inglés. En el referido documento se establece, en lo pertinente, que:

"Acuerdos y negociaciones con el contratista son realizados por el cliente, no por nosotros Banco."

"Las garantías de construcción y mejoras son con el contratista... NO con el Banco."

"Cliente tiene que entregar carta certificando que esté de acuerdo con todas las reparaciones realizadas para recibir su cheque de reembolso."

"El contratista se compromete a no hacer reclamación alguna contra el banco si el cliente no acepta pagar por mejoras incompletas o no aceptadas por el cliente."

"NO HAY ADELANTO... SOLO REEMBOLSO."

"El cheque es a nombre del cliente y del contratista."

"CLIENTE TIENE QUE TENER DINERO PARA REALIZAR LAS MEJORAS QUE INDICA LA TASACION."

7. El 20 de marzo de 2018 los demandantes llevaron a cabo la compraventa de la propiedad ubicada en la Calle Gardenia Núm. 1720, Urb. San Francisco mediante la Escritura Núm. 6 sobre compraventa del 20 de marzo de 2018 ante la Notario Nicole M. Cobb Vélez. El precio de la compraventa de la propiedad fue por la cantidad acordada de $200,000.00.

8. El 20 de marzo de 2018 los demandantes también obtuvieron el préstamo hipotecario núm. 17-8173 (VA #55-55-06-0130365) a 30 años con PMC y firmaron la correspondiente escritura de hipoteca, Escritura Núm. 149 ante la Notario Lesbia Hernández Miranda.

9. Esta compraventa, que incluye reparaciones y mejoras a la propiedad, fue financiada por un préstamo hipotecario bajo los parámetros del Departamento de Asuntos del Veterano.

10. El préstamo hipotecario fue por la cantidad total de $324,936.00, desglosados en la cantidad de $200,000.00 para el financiamiento de la compraventa de la propiedad y la cantidad de $124,936.00 para la obra de construcción de las reparaciones y mejoras a ser llevadas a cabo en la propiedad.

11. Luego de la compraventa quedó en "escrow account" un balance de $124,936.00, destinados para financiar las mejoras a la propiedad.

12. El 20 de marzo de 2018, durante el cierre, los demandantes firmaron varios documentos, como parte del proceso de otorgamiento del referido préstamo.

13. Entre los documentos firmados por los demandantes el 20 de marzo de 2018 se encuentran los siguientes:

a. Certificaciones

b. Certifications

c. Reconocimiento de Responsabilidad Absoluta y Relevo de Responsabilidad para Preferred Mortgage Corp. en Contratación de Contratista para Obras a Realizarse

d. Absolute Liability Recognition and Release of Liability for Preferred Mortgage Corp. in Hiring Contractors for works to be Done

e. Declaración de los compradores demandantes

f. Certificación de Haber Recibido Orientación Adecuada, Reconocimiento y Relevo de Responsabilidad

g. Acuerdo de Realizar Reparaciones Requeridas por

Reglamentación y Política de la Agencia Correspondiente

h. Agreement to Carry Out Repairs Required By Rules and Policy of the Corresponding Agency

i. Acuerdo de Realizar Reparaciones Requeridas por Reglamentación y Política de la Agencia Correspondiente

j. Agreement to Carry Out Repairs Required By Rules and Policy of the Corresponding Agency

k. Para Tu Protección Has Una Inspección

14. El 20 de marzo de 2018 los demandantes firmaron, en sus versiones en español e inglés, el documento titulado: Reconocimiento de Responsabilidad Absoluta y Relevo de Responsabilidad para Preferred Mortgage Corp. en Contratación de Contratista para Obras a Realizarse.

15. Los demandantes firmaron el documento titulado: PARA TU PROTECCION HAZ UNA INSPECCION, que les orienta sobre su derecho a contratar un inspector calificado independiente para evaluar la condición física, estructura, construcción y sistema mecánicos de la propiedad, así como identificar las cosas que deben ser reparadas o reemplazadas. Establece claramente que: "Tienes el derecho de examinar cuidadosamente la unidad que vas a comprar con un inspector calificado."

16. Los trabajos de construcción en la propiedad fueron contratados por los demandantes con el co-demandado Floor Plan Corp., por medio de su dueño, Sr. Edgardo Rovira.

17. Los demandantes buscaron, evaluaron, escogieron, negociaron, aprobaron y aceptaron la cotización y propuesta del contratista, y contrataron directamente con él para realizar las alteraciones, reparaciones y obras de mejoras en su propiedad.

18. Floor Plan Corp. y Edgardo J. Rovira ("el contratista") presentaron una cotización, propuesta fechada 12 de febrero de 2018, para realizar las alteraciones, reparaciones y obras de mejoras en la propiedad, por el total de construcción de $124,936.00. La misma fue aceptada y firmada por los demandantes.

19. Los codemandados PMC y ERC no firmaron la propuesta del contratista, Floor Plan Corp. y Edgardo J. Rovira, para realizar las alteraciones, reparaciones y obras de mejoras en la propiedad, es decir, el acuerdo entre los demandantes y el contratista del 12 de febrero de 2018.

20. Todos los desembolsos y cheques relacionados con el contratista y las reparaciones y obras de mejoras a la propiedad fueron emitidos a nombre de José Colón, Elsa Vidal y Floor Plan Corp.

21. El 20 de marzo de 2018, en el acto del cierre del préstamo hipotecario, se entregaron a los demandantes los cheques números 135908 por la suma de $6,566.00 como adelanto para el permiso de construcción y 135909 por la suma de $30,752.00 como adelanto de reparaciones (materiales).

22. Ambos cheques números 135908 por la suma de $6,566.00 como adelanto para el permiso de construcción y 135909 por la suma de $30,752.00 como adelanto de reparaciones (materiales) se expidieron a favor de José Colón, Elsa Vidal y Floor Plan

Corp. Los cheques fueron entregados a, y recibidos por, los demandantes el 20 de marzo de 2018, quienes los endosaron y entregaron al contratista.

23. Luego de su originación y cierre, el préstamo y la hipoteca fueron adquiridos por Banco Popular de Puerto Rico (BPPR), el cual asumió la administración del préstamo y del balance del dinero retenido para las obras de construcción; y el 26 de marzo de 2018 le fue remitido un cheque por la suma de $87,618.00 (balance del dinero retenido para las obras de reparaciones y remodelación en escrow account.

24. El 6 de abril de 2018, el Departamento de Asuntos del Veterano expidió el certificado de garantía del préstamo hipotecario por la suma de $324,936.00.

25. El 28 de abril de 2018 la demandante Elsa I. Vidal González firmó una autorización al Ingeniero Guillermo Burgos para realizar los trámites necesarios a la obtención y aprobación de los permisos y endosos concernientes al proyecto en la Urb. San Francisco, Calle Daniela, San Juan, PR.

26. El 30 de abril de 2018 el demandante José Colón Cotto y el Ing. Guillermo Burgos firmaron el Contrato de Designación Aceptación del Supervisor o Inspector de Obras. En el mismo, se designó al Ing. Guillermo Burgos como supervisor o inspector de obras en la construcción o desarrollo del proyecto ubicado en la Calle Diamela esquina Gardenia #1720, Urb. San Francisco, San Juan.

27. El Ing. Guillermo Burgos preparó y sometió al Municipio de San Juan, entre otros documentos la Solicitud del permiso de construcción, un Memorial Explicativo, un desglose completo de costos de las obras o mejoras a la propiedad sita en la Calle Damiela Núm. 1720, Urb. San Francisco, San Juan y las especificaciones técnicas del proyecto que se estaría realizando y que él estaría supervisando; además de una certificación como ingeniero proyectista de la obra ante la Oficina de Gerencia y Permisos. Los referidos documentos nunca fueron informados ni entregados a PMC.

28. El 25 de mayo de 2018 se expidió el permiso de construcción del Municipio de San Juan para mejoras a la propiedad sita en la Calle Damiela Núm. 1720, Urb. San Francisco, San Juan.

29. El 13 de junio de 2018, se emitió el cheque número xx771280 del BPPR por la suma de $6,566.00 como balance del permiso de construcción a nombre de José Colón, Elsa Vidal y Floor Plan Corp.

30. La parte demandante y el contratista recibieron el 25 de junio de 2018 el cheque número xx771280 del BPPR por la suma de $6,566.00 como balance del permiso de construcción.

31. El Ing. Guillermo Burgos nunca rindió un informe sobre las obras de construcción, reparación, remodelación y mejoras de la propiedad sita en la Calle Daniela Núm 1720, Urb. San Francisco.

32. Reyes Castro, como empleado de PMC, colaboró para visitar la propiedad en varias ocasiones, a solicitud de la institución bancaria, para evaluar con grado de razonabilidad que lo que alegaba el contratista que había realizado se podía observar en la obra; es decir, si

los desembolsos solicitados por el cliente y el contratista estaban fundados en lo que se podía percibir ocularmente del progreso de la obra.

33. Una vez se recibe el informe de lo observado por Reyes Castro, el BPPR procedía a preparar cheque, a nombre de los clientes y del contratista, de manera solidaria, para asegurar que el mismo fuera aceptado, firmado y endosado por los compradores y por el contratista, y con el aval de todos los firmantes acreditar la satisfacción con los trabajos realizados. Los demandantes, clientes o compradores podían negarse a firmar el cheque y negarse a entregarlo al contratista, si estaban insatisfechos con los trabajos realizados y la calidad de estos e incluso, en el documento titulado Requisitos Generales – Préstamo con reparaciones VA pactaron que el contratista "se compromete a no hacer reclamación alguna contra el banco si el cliente no acepta pagar por mejoras incompletas o no aceptadas por el cliente."

34. El 6 de junio de 2018 el contratista, Floor Plan Corp. y Edgardo Rovira, remitió una factura a nombre de los demandantes José Colón Cotto y Elsa Vidal.

35. El 12 de junio de 2018 ERC visitó la propiedad y observó el progreso de la obra. Ese mismo día preparó un "Memo to File" en torno a la primera fase de las obras.

36. El desembolso de la primera etapa o fase fue realizado a nombre de la parte demandante José Colón, Elsa Vidal y del contratista Floor Plan Corp., por la suma de $21,618.00, mediante cheque del BPPR, número 05002-0000775946 fechado 26 de junio de 2018.

37. Los demandantes José Colón y Elsa I. Vidal suscribieron una comunicación en manuscrito el 10 de julio de 2018 en el cual indican: "autorizamos a nuestra hija Mónica M. Colón a recoger los cheques junto con el Sr. Rovira (contratista)..."

38. El 16 de julio de 2018 la parte demandante -por conducto de su hija Mónica M. Colón- recogió y recibió el pago, junto al contratista, por la suma de $21,618.00, mediante cheque del BPPR, número 05002-0000775946 fechado 26 de junio de 2018.

39. La parte demandante recibió el pago por la suma de $21,618.00 mediante cheque, que firmó, endosó y lo entregó al contratista.

40. La Sra. Elsa I. Vidal González endosó y firmó por sí y por su esposo, José Colón Cotto, el cheque por la suma de $21,618.00 y luego se lo entregó al contratista.

41. El 20 de agosto de 2018 Floor Plan Corp. y Edgardo Rovira remitieron una segunda factura a nombre de los demandantes José Colón Cotto y Elsa Vidal.

42. El 28 de agosto de 2018 Eliezer Reyes Castro visitó la propiedad y observó el progreso de la obra. Ese mismo día preparó un "Memo to File" de las obras.

43. El desembolso de la segunda etapa o fase fue realizado a nombre del demandante José Colón, Elsa Vidal y del contratista Floor Plan Corp., por la suma de $21,325.00, mediante cheque del BPPR, número 05002-0000791766 fechado 5 de septiembre de 2018.

44. El 14 de septiembre de 2018 la parte demandante recogió y recibió -por conducto de su hija Mónica M.

Colón- junto al contratista, el pago por la suma de $21,325.00, mediante cheque del BPPR, número 05002-0000791766 fechado 5 de septiembre de 2018.

45. La parte demandante recibió el pago por la suma de $21,325.00, mediante cheque, que firmó, endosó y entregó al contratista.

46. La Sra. Elsa I. Vidal González también endosó y firmó por sí y por su esposo, José Colón Cotto, el cheque por la suma de $21,325.00 y luego se lo entregó al contratista.

47. A tenor con el contrato firmado entre la parte demandante y PMC, se emitieron los cheques a nombre de la parte demandante y del contratista; la parte demandante recibió estos pagos, los firmó, y le pagó al contratista.

48. Los siguientes cheques fueron emitidos a favor de José Colón, Elsa Vidal y Floor Plan Corp.: a. Número 135909 de 20 de marzo de 2018 por $30,752.00; b. Número 135908 de 20 de marzo de 2018 por $6,566.00; c. Número xx771280 de 13 de junio de 2018 por $6,566.00; d. Número xx775946 de 13 de junio de 2018 por $21,618.00; e. Número xx791766 de 5 de sept. de 2018 por $21,325.00.

49. El total de desembolsos por concepto de adelanto de materiales, permisos de construcción y reembolsos por reparaciones asciende a $86,827.00. El balance pendiente del préstamo de mejoras a la propiedad suma $38,109.00, luego de descontados tales pagos.

50. Los demandantes recogieron, recibieron, aceptaron y firmaron cada cheque y pago emitido, de los reseñados en el párrafo que antecede, y los entregaron al contratista, sin haber comunicado objeción o queja alguna a PMC.

51. Los demandantes apenas visitaron la propiedad una o dos veces mientras se llevaban a cabo las reparaciones o remodelaciones.

52. Luego del desembolso del cheque por la suma de $21,325.00, PMC no emitió desembolso, pago o cheque adicional alguno a favor de la parte demandante y del contratista.

53. El 3 de octubre de 2018 el contratista Floor Plan Corp. y Edgardo Rovira remitieron una tercera factura a nombre de los demandantes José Colón Cotto y Elsa Vidal, para el periodo de trabajo del 20 de agosto al 3 de octubre de 2018.

54. El 16 de octubre de 2018, conforme surge del expediente de PMC, se registró una llamada de la Sra. Mónica Colón, hija de los codemandantes José Colón y Elsa Vidal, en la que se le manifiesta a PMC que "las reparaciones iban muy lentas"; además en dicha anotación se indica que se coordinará una visita con el Sr. Eliezer Reyes.

55. El 19 de octubre de 2018 ERC visitó la propiedad y observó el progreso de la obra. Ese mismo día preparó dos (2) "Memo to File" en torno a la tercera fase de las obras.

56. El codemandado ERC acreditó el 19 de octubre de 2018 que no hubo progreso sustancial en la obra por parte del contratista, por lo cual no se libró pago al contratista en lo sucesivo, incluyendo el pago de la

factura del 3 de octubre de 2018 (2018-009) por la suma de $19,457.50.

57. El 26 de octubre de 2018, el Sr. Edgardo Rovira, entre otros asuntos, notificó "la cancelación de los trabajos durante este fin de semana (26-28 oct.), debido a la no aprobación para pago de la factura 2018-009 ($19,457.50)".

58. Mediante correo electrónico del 1 de noviembre de 2018, el çontratista notificó a los demandantes que "la obra será detenida...".

59. El 9 de noviembre de 2018 por primera vez los demandantes, remitieron al contratista una comunicación escrita fechada 6 de noviembre de 2018 y le reclamaron por su incumplimiento contractual, así como materiales y labores realizadas, vicios ocultos de las obras de remodelación y de las mejoras a la propiedad.

El TPI determinó que, el desembolso de fondos dependía de la inspección de un contratista que certificara las obras de construcción. Por tanto, luego de evaluar la documentación ante sí y la ausencia de las aprobaciones certificadas por parte de un inspector, razonó que, la parte peticionaria se excedió en aprobar cheques desembolsando dinero para el pago de las labores de construcción realizadas por los contratistas. De igual forma, resaltó que, la parte peticionaria autorizó pagos adelantados sin el consentimiento de la parte recurrida. Consecuentemente, resolvió que, la parte peticionaria debía responder por los daños que le ocasionó a la parte recurrida, los cuales debía probar en su momento en corte.

El 7 de enero de 2026, la parte peticionaria presentó una *Reconsideración a Resolución (Entrada Núm. 150)* en la que indicó que, el foro primario debía reconsiderar debido a que actuó de buena fe al autorizar el desembolso de dinero para llevar a cabo el pago de las obras realizadas en la propiedad de la parte recurrida.[17] En esa línea, adujo que, emitía pagos, en favor de los contratistas, por etapas y no de forma adelantada. Por ende, solicitó que el *foro a quo* reconsiderara el dictamen recurrido.

---

[17] Entrada Núm. 152 del caso núm. SJ2021CV01387 en el SUMAC.

El 9 de enero de 2026, el TPI emitió una *Orden* en la que declaró No Ha Lugar la *Reconsideración a Resolución (Entrada Núm. 150).*

Inconforme, el 16 de enero de 2026, la parte peticionaria radicó un recurso de *Certiorari* en el que coligió los siguientes señalamientos de error:

> Primer error: Erró el Tribunal de Primera Instancia al ignorar y no considerar el requisito de notificación "a las demás partes en el pleito" exigido por la Regla 47 de las Reglas de Procedimiento Civil.

> Segundo error: Erró el Tribunal de Primera Instancia al: (1) aplicar erróneamente la normativa del caso de *Cruz Cruz v. Casa Bella Corp.,* 213 DPR 980 (2024) a la situación de hechos del caso de epígrafe, siendo ésta totalmente distinta y distinguible; y no habiendo desembolsado PMC "los fondos del préstamo que otorgó por un contrato del cual no formó parte."; y (2) no aplicar la doctrina de los actos propios a los demandantes.

> Tercer error: Erró el Tribunal de Primera Instancia al determinar que PMC hizo los desembolsos o pagos por adelantado y sin el consentimiento de los demandantes.

> Cuarto error: Erró el Tribunal de Primera Instancia al determinar que la parte demandante "entendía" que Eliezer Reyes Castro -empleado de PMC- "supervisaba la obra" y que sus actuaciones en la preparación de los informes sobre desembolsos conllevan responsabilidad de la institución financiera.

> Quinto error: Erró el Tribunal de Primera Instancia al ignorar la falta de una parte indispensable en el pleito, consistente en el Ing. Guillermo Burgos, contratado por los demandantes como el supervisor o inspector de las obras de reparación, remodelación y mejoras a su propiedad.

En atención a nuestra *Resolución,* el 29 de enero de 2026, la parte recurrida instó una *Oposición a recurso de certiorari.*

Con el beneficio de la comparecencia de las partes, procederemos a resolver el recurso ante nuestra consideración.

## II.

## A.

El auto de *certiorari* es un remedio procesal discrecional que permite a un tribunal de mayor jerarquía revisar las determinaciones de un tribunal inferior. *Rivera et al. v. Arcos Dorados et al.,* 212 DPR 194 (2023); *Torres González v. Zaragoza Meléndez,* 211 DPR 821 (2023). Véase, además, *IG Builders et al v.*

*BBVAPR,* 185 DPR 307, 337 (2012); *Medina Nazario v. McNeil Healthcare LLC,* 194 DPR 723, 728 (2016). A diferencia de una apelación, el tribunal de superior jerarquía tiene la facultad de expedir el auto de *certiorari* de forma discrecional. *Rivera Figueroa v. Joe's European Shop,* 183 DPR 580, 596 (2011). Cónsono con lo anterior, la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, dispone en lo pertinente lo siguiente:

> El recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 de este apéndice o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de *certiorari* en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión.
>
> [. . .]

Si el asunto sobre el cual versa el recurso de *certiorari* está comprendido en una de las instancias establecidas en la Regla 52.1 de Procedimiento Civil, *supra,* debemos pasar entonces a un segundo escrutinio. El mismo se caracteriza por la discreción que ha sido conferida al Tribunal de Apelaciones para autorizar, expedir y adjudicar en sus méritos el caso. En aras de ejercer de manera sabia y prudente nuestra facultad discrecional, la Regla 40 del Reglamento del Tribunal de Apelaciones, según enmendada, *In re Aprob. Enmdas. Reglamento TA,* 2025 TSPR 141, 216 DPR __ (2025), dispone los criterios a considerar para poder atender o no las controversias ante su consideración. *BPPR v. SLG Gómez-López,* 213 DPR 314 (2023). Véase, *Rivera et al. v. Arcos Dorados et al.,* *supra*; *Pueblo v. Rivera Montalvo,* 205 DPR 352, 372 (2020); *Torres*

*Martínez v. Torres Ghigliotty,* 175 DPR 83, 96-97 (2008). Los criterios que debemos considerar son los siguientes:

> El tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:
>
> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> (D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> (E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
>
> (F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
>
> (G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Lo anterior impone a este Tribunal la obligación de ejercer prudentemente su juicio al intervenir con el discernimiento del foro de instancia, de forma que no se interrumpa injustificadamente el curso corriente de los casos ante ese foro. *Torres Martínez v. Torres Ghigliotty, supra,* pág. 97.

**B.**

El mecanismo procesal de la sentencia sumaria surge de la Regla 36.1 de Procedimiento Civil, 32 LPRA, Ap. V, R. 36.1. El propósito de esta regla es facilitar la solución justa, rápida y económica de litigios civiles en los cuales no existe controversia real y sustancial de hechos materiales que no requieren ventilarse en un juicio plenario. *Batista Valentín v. Sucn. de José Enrique Batista Valentín y otros,* 2025 TSPR 93, 216 DPR ___ (2025). *Rodríguez García v. UCA,* 200 DPR 929, 940 (2018); *Bobé et al. v. UBS Financial Services,* 198 DPR 6, 20 (2017); *SLG Zapata-Rivera v. J.F. Montalvo,* 189 DPR 414, 430 (2013). El mecanismo de sentencia sumaria procede en los casos en los que no exista controversia real

y sustancial en cuanto a los hechos materiales y reste disponer las controversias de derecho existentes. *Batista Valentín v. Sucn. de José Enrique Batista Valentín y otros*, 2025 TSPR 93, 216 DPR ___ (2025). *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 430 (2013); *PFZ Props., Inc. v. Gen. Acc. Ins. Co.*, 136 DPR 881, 911-912 (1994). La parte que promueve la moción de sentencia sumaria debe establecer con claridad su derecho y demostrar que no existe controversia real en cuanto a algún hecho material. *González Aristud v. Hosp. Pavía*, 168 DPR 127, 137 (2006). En específico, la Regla 36.1 de Procedimiento Civil, *supra*, R. 36.1, establece lo siguiente:

> Una parte contra la cual se haya formulado una reclamación podrá presentar, a partir de la fecha en que fue emplazado pero no más tarde de los treinta (30) días siguientes a la fecha límite establecida por el tribunal para concluir el descubrimiento de prueba, una moción fundada en declaraciones juradas o en aquella evidencia que demuestre la inexistencia de una controversia sustancial de hechos esenciales y pertinentes, para que el tribunal dicte sentencia sumariamente a su favor sobre la totalidad o cualquier parte de la reclamación.

No obstante, cualquier duda es insuficiente para derrotar una solicitud de sentencia sumaria. *Ramos Pérez v. Univisión*, 178 DPR 200, 213-214 (2010). Con ello, la duda debe ser de tal naturaleza que permita "concluir que existe una *controversia real y sustancial* sobre hechos relevantes y pertinentes". *Ramos Pérez v. Univisión, supra*, pág. 214.

En contraste, el oponente a la moción de sentencia sumaria está obligado a establecer que existe una controversia real en cuanto a algún hecho material a la controversia y, en ese sentido, no es cualquier duda la suficiente para derrotar la solicitud. *Meléndez González et al. v. M. Cuebas*, 193 DPR 100, 138 (2015). El oponente, no puede descansar en meras aseveraciones o negaciones de sus alegaciones, sino que debe proveer contradeclaraciones juradas y documentos que sustenten los hechos materiales en disputa. *Batista Valentín v. Sucn. de José Enrique Batista Valentín y otros*,

2025 TSPR 93, 216 DPR ___ (2025). *SLG Zapata-Rivera v. JF Montalvo, supra,* pág. 213.; *Ramos Pérez v. Univisión, supra,* pág. 215; *Cruz Marcano v. Sánchez Tarazona,* 172 DPR 526, 550 (2007).

Entretanto, la Regla 36.3 de Procedimiento Civil, *supra,* R. 36.3, establece el procedimiento para la consideración de la moción de sentencia sumaria, así como el contenido de la moción y de la contestación de la parte promovida. Respecto a la moción solicitando que se dicte una sentencia sumaria, la Regla 36.3(a) de Procedimiento Civil, *supra,* R. 36.3(a), dispone que tendrá que desglosar lo siguiente:

(1) una exposición breve de las alegaciones de las partes;
(2) los asuntos litigiosos o en controversia;
(3) la causa de acción, reclamación o parte respecto a la cual es solicitada la sentencia sumaria;
(4) una relación concisa, organizada y en párrafos enumerados de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal;
(5) las razones por las cuales debe ser dictada la sentencia, argumentando el derecho aplicable, y
(6) el remedio que debe ser concedido.

La Regla 36.3(b) de Procedimiento Civil, *supra,* R. 36.3(b) prescribe que la contestación a la moción de sentencia sumaria debe contener, además de los sub incisos (1), (2) y (3) del inciso (a): una relación de los hechos esenciales y pertinentes que están en controversia, con referencia a los párrafos enumerados por la parte promovente y con indicación de la prueba en la que se establecen esos hechos; una enumeración de los hechos que no están en controversia; y las razones por las cuales no se debe dictar la sentencia, argumentando el derecho aplicable.

Así pues, la Regla 36.3(c) de Procedimiento Civil, *supra,* R. 36.3(c) añade que, cuando se presente una moción solicitando sentencia sumaria y se sostenga conforme a la Regla 36, *supra,* la

parte promovida no podrá descansar en las aseveraciones contenidas en sus alegaciones. Por el contrario, estará obligada a contestar detallada y específicamente como lo haya hecho la parte promovente de la moción. De no hacerlo, la citada regla prescribe que se dictará la sentencia sumaria en su contra, si procede.

En esa línea, la Regla 36.5, *supra,* R. 36.5 establece que las declaraciones juradas para sostener u oponerse a la moción se basarán en el conocimiento personal de la persona declarante y que contendrán los hechos que serían admisibles en evidencia y demostrarán afirmativamente que la persona declarante está cualificada para testificar en cuanto a su contenido. Asimismo, prescribe que "[c]opias juradas o certificadas de todos los documentos, o de partes de éstos en que se haga referencia en una declaración jurada, deberán unirse a la declaración o notificarse junto con ésta". *Íd.*

Por otro lado, la Regla 36.6, *supra,* instituye el mecanismo a seguir cuando no puedan obtenerse declaraciones juradas. Al respecto, estatuye que, si las declaraciones juradas de la parte que se oponga a la moción resultan que no puede presentar mediante declaraciones juradas hechos esenciales para justificar su oposición, entonces el tribunal podrá denegar la solicitud de sentencia sumaria o posponer su consideración. De posponer la consideración, el foro primario podrá dictar cualquier orden que entienda justa y le concederá a la parte promovida un término razonable para obtener declaraciones juradas, tomar deposiciones o conseguir que la parte contraria le facilite cierta evidencia.

Sin embargo, los tribunales no podrán dictar sentencia sumaria en cuatro situaciones: (1) cuando existan hechos materiales y esenciales controvertidos; (2) cuando existen alegaciones afirmativas en la demanda sin refutar; (3) cuando surge

de los propios documentos que acompañan la moción en solicitud de sentencia sumaria que existe una controversia sobre algún hecho material o esencial; o (4) cuando no procede como cuestión de Derecho. *Oriental Bank v. Perapi*, 192 DPR 7, 26-27 (2014).

Conforme con esos principios, en *Meléndez González et al. v. M. Cuebas*, supra, el Tribunal Supremo delineó el estándar que el Tribunal de Apelaciones debe utilizar para revisar una denegatoria o una concesión de una moción de sentencia sumaria.

En primer lugar, reafirmó que el Tribunal de Apelaciones se encuentra en la misma posición que el TPI al momento de revisar solicitudes de sentencia sumaria, siendo su revisión una *de novo* y teniendo la obligación de regirse por la Regla 36 de Procedimiento Civil, *supra*, y los criterios que la jurisprudencia le exige al foro primario. *Íd.*, pág. 118. Asimismo, deberá examinar el expediente de la manera más favorable hacia la parte promovida, llevando a cabo todas las inferencias permisibles a su favor. *Íd.* Ahora bien, reconoció que el foro apelativo está limitado, toda vez que no podrá tomar en consideración evidencia que las partes no presentaron ante el foro primario, ni podrá adjudicar los hechos materiales en controversia. *Íd.*

En segundo lugar, prescribió que el Tribunal de Apelaciones deberá revisar que tanto la moción en solicitud de sentencia sumaria, como la oposición, cumplan con los requisitos de forma codificados en la Regla 36 de Procedimiento Civil, *supra*. Íd.

En tercer lugar, mandató que, ante la revisión de una sentencia dictada sumariamente, el Tribunal de Apelaciones deberá revisar si en realidad existen hechos materiales en controversia y, de haberlos, estará obligado a exponer específicamente cuáles hechos materiales están en controversia y cuáles no, en

cumplimiento con la Regla 36.4 de Procedimiento Civil, *supra*, R. 36.4. *Íd.*

En cuarto lugar, dispuso que, si encuentra que los hechos materiales realmente no están en controversia, entonces el Tribunal de Apelaciones deberá revisar *de novo* si el foro primario aplicó correctamente el Derecho. *Íd.*, pág. 119.

### C.

El Art. 1063 del Código Civil, 31 LPRA sec. 8984, establece que una de las fuentes de las obligaciones son los contratos. Con ello, el Art. 1230 del Código Civil, 31 LPRA sec. 9751, define a un contrato "como el negocio jurídico bilateral por el cual dos o más partes expresan su consentimiento en la forma prevista por la ley, para crear, regular, modificar o extinguir obligaciones". Así pues, lo acordado en los contratos tiene fuerza de ley entre las partes, sus sucesores y los terceros en la forma en que dispone la ley. Art. 1233 del Código Civil, *supra* sec. 9754. Para que un contrato quede perfeccionado deben concurrir los siguientes elementos: consentimiento de los contratantes, objeto y causa. *Oriental Bank v. Perapi*, 192 DPR 7, 15 (2014). Los contratos se rigen por la autonomía de la voluntad de las partes en el que estas pueden establecer pactos, cláusulas y condiciones que estimen conveniente, siempre que no sean contrarias a la ley, moral y orden público. *Oriental Bank v. Perapi, supra.* Otro principio que rige las obligaciones es el principio *pacta sunt servanda* la cual establece que las obligaciones nacen de los contratos que tienen fuerza de ley entre las partes y deben cumplirse a tenor con los mismos. *PRFS v. Promoexport*, 187 DPR 42, 52 (2012). Asimismo, los contratos se fundan a base de la autonomía de la voluntad y libertad que tiene las partes contratantes en las que establecen los pactos, cláusulas y condiciones que tengan por convenientes. *BPPR v. Sunc. Talavera*,

174 DPR 686, 694 (2008). En circunstancias, no es posible determinar la voluntad de las partes ante la mera lectura de las cláusulas contractuales *Cruz Cruz v.Casa Bella Corp.*, 213 DPR 980, 996 (2024). Ante ello, es necesario examinar la intención de las partes en virtud de los actos anteriores, coetáneos y posteriores al contrato. *Cruz Cruz v.Casa Bella Corp.*, *supra*, pág. 996, citando a: *Negrón Vélez v. ACT*, 196 DPR 489, 506–507 (2016); *Blás v. Hospital Guadalupe,* 167 DPR 439, 451 (2006).

En *Cruz Cruz v.Casa Bella Corp.*, *supra*, pág. 1004, el Tribunal Supremo resolvió que, las obligaciones y contratos deben cumplirse a cabalidad tras ser ley entre las partes. A su vez, el máximo foro judicial interpretó que, las partes deben cumplir con los acuerdos consignados en el contrato de préstamo y no las que surgían de otros acuerdos externos. *Cruz Cruz v.Casa Bella Corp.*, *supra*, pág. 1005. Empero, aunque un contrato de construcción y relevo de responsabilidad no sea vinculante para un tercero que no es parte del contrato, no excluye la posibilidad de que este tercero pueda invocar alguna disposición en su beneficio. *Cruz Cruz v.Casa Bella Corp.*, *supra*, pág. 1006. Los daños y perjuicios que una parte reclame deben ser en consecuencia de lo estipulado contractualmente y no por presuntos vicios de construcción. *Cruz Cruz v.Casa Bella Corp.*, *supra*, pág. 1007. En el citado caso, el Tribunal Supremo atisbó que, los contratantes no podían desligarse de las consecuencias de permitir un proyecto de construcción, en la que había problemas, sin informarle a la institución financiera sobre dicha situación y sin oponerse al desembolso de fondos. *Cruz Cruz v.Casa Bella Corp.*, *supra*, pág. 1008.

**D.**

Como parte del debido proceso de ley, es compulsorio añadir a todas las partes que tengan un interés común en un pleito. *Pérez*

*Ríos v. Luma Energy, LLC,* 213 DPR 203, 212 (2023). Este requisito responde a la protección constitucional la cual impide a una persona que no sea privada de su libertad y propiedad sin un debido proceso de ley y la necesidad de que el dictamen judicial sea emitido en su día completo. *Pérez Ríos v. Luma Energy, LLC, supra,* págs. 212-213, citando a: *RPR & BJJ, Ex parte,* 207 DPR 389, 407 (2021); *Cepeda Torres v. García Ortiz,* 132 DPR 698, 704 (1993). Como corolario de lo anterior, la Regla 16.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 16.1, estatuye que las personas que tengan un interés común, que sin su presencia no se pueda adjudicar la controversia, serán incluidas como partes en el pleito. Ahora bien, el interés común ha sido interpretado por el Tribunal Supremo como aquel que "no se trata de un mero interés en la controversia, sino de aquel de tal orden que impida la confección de un decreto adecuado sin afectarlo". *Deliz et als. v. Igartúa et als.,* 158 DPR 403, 433 (2003). El planteamiento de parte indispensable se puede presentar en cualquier momento, incluso por primera vez en una apelación. *Pérez Ríos v. Luma Energy, LLC, supra,* pág. 213. Asimismo, el Tribunal lo puede levantar motu proprio dado que, ante la ausencia de una parte indispensable, el tribunal carece de jurisdicción para atender el caso. *Pérez Ríos v. Luma Energy, LLC, supra,* pág. 213; *RPR & BJJ, Ex parte, supra,* pág. 407.

**E.**

El Art. II, Sec. 7 de la Constitución de Puerto Rico (Const. ELA) prohíbe que cualquier persona sea privada de su libertad o propiedad sin un debido proceso de ley. Art. II, SEC. 7, Const. ELA. Art. II, Sec. 7, LPRA, Tomo I. La dimensión procesal del debido proceso de ley en el contexto adjudicativo exige como mínimo: (1) la notificación adecuada del proceso; (2) el proceso ante un juez imparcial; (3) la oportunidad de ser oído; (4) el derecho a contrainterrogar a los testigos y examinar la evidencia presentada

en su contra; (5) el tener asistencia de un abogado, y (6) que la decisión se base en el expediente. [...] Por tal razón, es indispensable que la notificación sea adecuada a todas las partes. *PVH Motor, LLC* v. *Junta de Subastas de la Administración de Servicios Generales Peticionarios*, 209 DPR 122, 131 (2022); *Vázquez v. Santini*, 178 DPR 636, 643 (2010); *Garriga v. Mun. San Juan*, 176 DPR 182, 197 (2009). Por lo tanto, para que un tribunal pueda ejercer su autoridad con el fin de decidir sobre un asunto, "el método de notificación tiene que ofrecer una probabilidad razonable de informarle [al demandado] ... sobre la acción entablada en su contra, de forma tal que pueda comparecer a defenderse si así lo desea". *Natal v. Romero*, 206 DPR 465, 510 (2021).

En lo pertinente, la notificación de un dictamen judicial es un requisito con el que se debe cumplir de modo que las partes advengan en conocimiento sobre la decisión final que se ha tomado en su contra. *Plan Salud Unión v. Seaboard Sur. Co.*, 182 DPR 714, 722 (2011). Ello, tal como lo exige el debido proceso de ley. *Río Const. Corp. v. Mun. de Caguas*, 155 D.P.R. 394, 405 (2001).

En atención a la controversia ante nos, la Regla 47 de Procedimiento Civil, *supra*, R. 47, establece que la parte promovente debe notificar a las demás partes sobre la presentación de una moción de reconsideración de manera simultánea.

**III.**

En el caso de autos, la parte peticionaria argumentó que, el foro primario erró en determinar que incumplió con sus obligaciones contractuales, particularmente, en endosar cheques sin el consentimiento de la parte recurrida. Asimismo, alegó que, el *foro a quo* no debió aplicar el caso de *Cruz Cruz v. Casa Bella Corp.*, *supra*, a la controversia del pleito. Además, adujo que, el foro primario debió incluir en el pleito al inspector contratado por la parte recurrida tras ser una parte indispensable en el pleito. Por otro lado,

arguyó que, el TPI erró al no notificar a todas las partes del pleito sobre la *Resolución* recurrida. Igualmente, argumentó que, la parte recurrida no le notificó a las partes en rebeldía sobre la *Moción de reconsideración*. Veamos.

Luego de un examen sosegado del expediente ante nos, y en correcta práctica apelativa, colegimos que no vamos a abstenernos de ejercer nuestra función revisora y, por tanto, procede intervenir con la determinación del foro primario.

En primer lugar, atenderemos el primer señalamiento de error.

A tenor con el marco jurídico expuesto, conforme al debido proceso de ley en la vertiente procesal, las partes ostentan el derecho a ser debidamente notificadas sobre los pronunciamientos judiciales y los recursos que las partes interpongan ante el foro judicial. Así pues, cuando una parte promovente presente una moción de reconsideración, esta debe simultáneamente notificar a todas las partes del pleito sobre la misma.

Tras examinar el expediente ante nos, denotamos que el primer señalamiento de error no se cometió. La parte recurrida instó una *Moción de reconsideración* dentro del término que establece la Regla 47 de Procedimiento Civil, *supra*. En esa línea, no surge del volante de notificación que, la parte recurrida le haya notificado de forma electrónica a las partes en rebeldía sobre la mencionada moción. No obstante, el 16 de enero de 2026, la parte recurrida instó una *Moción informativa y aclaratoria para el récord*[18] en la que certificó que, le notificó a las partes en rebeldía sobre la presentación de la referida moción. Igualmente, el *foro a quo* cumplió en debidamente notificarle a las partes en rebeldía sobre el dictamen recurrido. A esos fines, determinamos que, las partes en rebeldía

---

[18] Entrada Núm. 155 del caso núm. SJ2021CV01387 en el SUMAC.

fueron debidamente notificadas sobre la *Moción de reconsideración* y, por tanto, no se cometió el primer señalamiento de error.

Por estar relacionados el segundo, tercer y cuarto señalamiento de error, procederemos a discutirlos en conjunto.

Conforme las normas jurídicas pormenorizadas, nos encontramos en la misma posición que el TPI para revisar una solicitud de sentencia sumaria. En primer lugar, nos corresponde evaluar si las partes cumplieron con los requisitos de forma exigidos por la Regla 36.3 de Procedimiento Civil, *supra*, respecto a la moción de sentencia sumaria, así como su oposición.

Luego de evaluar la *Moción solicitud de sentencia sumaria parcial*, concluimos que esta cumplió con los requisitos de forma establecidos en la Regla 36.3 de Procedimiento Civil, *supra*, R. 36.3. En dicha solicitud, la parte peticionaria enumeró varias determinaciones de hechos que a su juicio no había controversia sobre ellos. En aras de respaldar los hechos incontrovertidos, anejó los documentos correspondientes e hizo referencia a cada uno de ellos de forma específica.

Por otra parte, en la *Oposición a solicitud de sentencia sumaria parcial* la parte recurrida cumplió con los requisitos de forma dispuestos en la citada regla. Ello, pues la parte recurrida enumeró los hechos en los que razonaba existía controversia de hechos y los hechos incontrovertidos.

Ahora nos corresponde determinar si existen hechos en controversia que imposibilitan la disposición sumaria del caso. Luego de un examen cuidadoso del expediente y las mociones de sentencia sumaria y su oposición, así como los documentos incluidos en las mociones de sentencia sumaria, concluimos que

existen hechos materiales en controversia en la *Resolución*[19] recurrida. Veamos.

**Determinaciones de hechos controvertidos:**

1. Surge en el documento titulado, Reconocimiento de Responsabilidad Absoluta y Relevo de Responsabilidad para Preferred Mortgage Corp. en Contratación de Contratista para Obras a Realizarse en el que, la parte recurrida asumió la obligación sobre verificar el progreso de la obra de construcción. Ello, aunque la parte peticionaria inspeccionaba la construcción para asegurarse si procedía el reclamo del pago.

2. No se desprende que hubo un contrato entre la parte peticionaria y Floor Plan Corp. y Edgardo J. Rovira con respecto a la propiedad, pese a que la parte peticionaria acudió en varias instancias para verificar el progreso de la obra de construcción con tal de confirmar si correspondía endosar los cheques para el pago de la labor de los contratistas.

3. La parte recurrida suscribió un contrato con el Ing. Guillermo Burgos titulado *Contrato de Designación Aceptación del Supervisor o Inspector de Obras,* aunque la parte recurrida adujo que, la responsabilidad de inspeccionar la obra la asumió la parte peticionaria.

4. El señor Reyes Castro, como empleado de PMC, visitó la propiedad en aras de inspeccionar el progreso de la obra aun cuando su responsabilidad era cerciorarse que procedía el desembolso de los pagos reclamados por los contratistas.

5. El señor Reyes Castro inspeccionaba la obra para justificar los cheques en favor de los contratistas, pese a que la parte recurrida contrató a un inspector para llevar a cabo dicha labor.

6. La parte recurrida visitó en pocas ocasiones la propiedad para inspeccionar el progreso de esta, aunque suscribió un contrato en el que asumió la responsabilidad sobre verificar el avance de la construcción.

Esta Curia resuelve que, ante las esbozadas determinaciones de hechos, existe controversia dado que hay incongruencia con respecto a la intención de las partes, en cuanto a quién fue negligente en autorizar el desembolso del pago de las labores de los contratistas ante una obra de construcción incompleta.

---

[19] Entrada Núm. 150 del caso núm. SJ2021CV01387 en el SUMAC.

A tenor con lo anterior, la parte recurrida inició el caso de autos señalando que, la parte peticionaria incumplió contractualmente con sus funciones tras ser responsable en autorizar el desembolso de cheques en favor de los contratistas, sin su consentimiento. Empero, nos resulta paradójico que, la parte recurrida haya entablado una causa de acción en contra de la parte peticionaria. Ello, toda vez que, examinada la documentación en la moción de sentencia sumaria y su oposición, la parte recurrida firmó un contrato en el que acordó asumir entera responsabilidad acerca de los aspectos relacionados a la contratación y negligencia en la que pudiera incurrir los contratistas. Pese a las alegaciones de la parte recurrida, se desprende que, esta firmó varios cheques para que el ente bancario pudiera endosar el cheque dirigido en favor de los contratistas. Así pues, no tenemos constancia sobre los motivos por los cuales la parte recurrida consintió a firmar los cheques, ante su descontento con la alegada dejadez de los contratistas en cumplir con la construcción. Tampoco, la parte recurrida anejó documentación en su oposición que evidenciara que fue diligente en verificar que los contratistas estuvieran cumpliendo en construir las mejoras pactadas contractualmente. Igualmente, la parte recurrida no incluyó prueba documental que justificara los motivos por los cuales carecía tener conocimiento acerca de la labor de los contratistas que nos persuadiera a resolver en su favor. Asimismo, la parte recurrida contrató a un inspector para que corroborara el progreso de la construcción y certificara las labores llevadas a cabo por los contratistas, empero, no tenemos ante sí las debidas certificaciones de este. Como vemos, ante la incongruencia de hechos, estamos impedidos de disponer sumariamente el pleito. Ello, pues debido a que existe controversia en cuanto a los roles que asumieron las partes y si cumplieron sus obligaciones contractuales.

Por otro lado, nos resulta importante resaltar que, luego de examinar la documentación del pleito, la parte peticionaria alegó que su rol se limitó a financiar la propiedad en controversia a los fines de autorizar los desembolsos solicitados por los contratistas. En primer lugar, no tenemos constancia si la parte peticionaria no endosó los cheques con la debida certificación de un inspector que describiera las obras llevadas a cabo por los contratistas que justificaran el pago de dichas labores y, por tanto, desconocemos si cumplió contractualmente con sus obligaciones. En segundo lugar, denotamos una incongruencia con respecto a cuál fue la labor del señor Eliezer Reyes. Al respecto, la parte peticionaria denotamos que, esta fue activa en cuanto a inspeccionar el progreso del proyecto de construcción. A su vez, el señor Eliezer Reyes contractualmente tenía el rol de cumplir con los aspectos relacionados al financiamiento de la propiedad. Ante este cuadro, consideramos que estamos ante una posible novación dado a que existe una incongruencia en cuanto que labor tenía el señor Eliezer Reyes.[20] Ello, pues este debía encargarse únicamente del financiamiento de la obra de construcción.

A esos fines, los errores imputados por la parte peticionaria se cometieron y procede revocar la *Resolución* recurrida. Le corresponderá al TPI atender controversias medulares sobre las actuaciones de las partes con respecto al endoso de los cheques para pagarle a los contratistas. También, el *foro a quo* deberá evaluar si las partes cumplieron contractualmente con las obligaciones pactadas. Ello, en aras de evaluar si procede la indemnización de daños y perjuicios reclamada por la parte recurrida.

Por último, con respecto al quinto señalamiento de error, la parte peticionaria alegó que, el foro primario no incluyó como parte

---

[20] *Véase* Art. 1182 del Código Civil, *supra* sec. 9421.

indispensable en el pleito al Ing. Guillermo Burgos, el cual fue contratado por la parte recurrida para supervisar la obra de construcción. A esos efectos, una parte indispensable es aquella que tiene un interés común en el pleito. El Tribunal Supremo ha interpretado interés común como aquel que "no se trata de un mero interés en la controversia, sino de aquel de tal orden que impida la confección de un decreto adecuado sin afectarlo". *Deliz et als. v. Igartúa et als.*, 158 DPR 403, 433 (2003).

Ante este cuadro, colegimos que, el Ing. Guillermo Burgos no es una parte indispensable en el pleito en virtud de que su falta de participación en la causa de acción no impide que el foro primario pueda emitir el dictamen. Ello, pues las partes que tienen un interés en la controversia con respecto a las obligaciones contractuales son la parte peticionaria y la parte recurrida, no el Ing. Guillermo Burgos. Atisbamos que, tanto este pronunciamiento judicial como el que emita el *foro a quo* no afecta al Ing. Guillermo Burgos debido a que la controversia no gira entorno a algún derecho o interés de este en la causa de acción.

A la luz de los fundamentos pormenorizados, el TPI no debió resolver sumariamente la controversia ante la incongruencia de los roles asumidos por las partes y sus obligaciones contractuales.

### IV.

Por los fundamentos que anteceden, expedimos el auto de *certiorari* solicitado, revocamos la *Resolución* recurrida y ordenamos que el foro primario resuelva conforme a lo aquí resuelto.

Notifíquese.

Lo acuerda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones